# Wytheville.

## NORFOLK & WESTERN RAILROAD CO. v. WARD.

### JUNE 14th, 1894.

1. EMPLOYEES—*Contributory negligence—Obedience to orders.*—Where employee acts in obedience to orders he cannot be deemed guilty of contributory negligence, unless the danger be so glaring that no prudent man would encounter it, even when, like the employee, he was not entirely free to choose.

2. IDEM—*Increased dangers—Liability of employers—Case at bar.*—Defendant had plaintiff employed in making excavations that demanded much caution. "Ground-hog-holes" were dug eighteen inches wide and thirteen feet deep instead of six or eight feet deep as usual, with sides unsupported. "Boss," without examining as to the safety of the work, ordered plaintiff, who was unaware of the increased dangers thereof, to go in and dig the hole deeper. The sides caved in and disabled plaintiff for life: HELD, defendant is liable.

3. IDEM—*Knowledge of danger—Burden of proof.*—The burden rests upon employer to prove that employee was aware of the increased dangers growing out of employer's negligence, and not out of the dangers incident to his ordinary employment.

Error to judgment of circuit court of Carroll county, rendered at its November term, 1892, in an action of trespass on the case wherein C. C. Ward was plaintiff and the Norfolk and Western Railroad Company, the plaintiff in error, was defendant. Opinion states the case.

*Brown & Moore*, for plaintiff in error.

*R. C. Jackson* and *W. D. Tompkins*, for defendant in error.

FAUNTLEROY, J., delivered the opinion of the court.

This suit is for damages for an injury received by the plaintiff while in the employ of the defendant company grading the track of its road.

After all the evidence had been introduced the court gave four instructions asked for by the plaintiff, which were excepted to by the defendant, and gave six instructions asked for by the defendant, which were excepted to by the plaintiff. The jury found for the plaintiff, and assessed $1,100 damages.

The defendant moved to set aside the verdict, and for a new trial, on the ground that the verdict is contrary to the evidence and law of the case, which motion the court overruled and entered the judgment complained of, upon the finding of the jury.

The defendant excepted to the action of the court, and the evidence is certified.

The plaintiff in error assigns for error that the judgment is erroneous, in that the court overruled the motion to set aside the verdict of the jury, as contrary to the law and the evidence, and to grant a new trial; and that the instructions given to the jury, on the prayer of the plaintiff, are erroneous.

The appellee, Ward, received severe and permanent injury by the caving in of the side of a chamber, or " ground-hog-hole," as known in the parlance of railroad-track grading, eighteen inches wide, thirteen feet deep, and twelve feet into the mass of impending earth to be excavated and removed, in which he was working in the employ of the defendant company, and into which he was specifically and peremptorily ordered to go and dig and excavate it deeper, after he had dug it, and shoveled out the earth, to even a greater depth than was the customary and prudent depth, by the supervising and authoritative " boss " in charge of the work as the agent of the appellant.

The defendant company claims that the evidence failed to

show any negligence on the part of the company, and that the plaintiff knew, or ought to have known, of the danger of the place and character of the work; and that he assumed the risk incident to his employment.

The evidence is certified, and in reviewing the finding of the jury upon the facts, we are confined to the evidence for the appellee where there is any conflict. Abundant evidence was introduced by the plaintiff (who is appellee here) to show that the place in which he worked, and the method of the work, as ordered and conducted by the defendant, were not reasonably safe, and that the agent of the company in charge of the digging and excavating did not adopt or observe the requisite and usual caution to prevent or guard against the extreme danger of the work into which he specifically and positively ordered the appellee to go, and which, proximately, caused his severe and lasting injury. The soil or earth in which the defendant company was constructing its road-bed was treacherous at this place—rotten and seamy; and the evidence shows that it was known to the company's agent and representative to be dangerous to work in by sinking chambers and undermining and breaking off the forehead or blocked out mass. Their foreman, who ordered the appellee to go back into the hog-hole and sink it to the unusual and dangerous depth of thirteen feet, knew of the risk of the undertaking, and expressed his fear that he would get his men killed in the chambers by the falling in of the sides of the rotten, loose, and seamy earth; and only a day or two before the accident which injured the appellee, one of the chambers near by caved in because of the character of the earth and the unsupported sides of the "hog-hole." After Ward, the appellee, had sunk the chamber in which the accident occurred to the usual depth to which they had been sinking them, he came out to break off the forehead as the usual precaution for safety. Long, the standing boss, was peremptorily ordered by Hanks, the walking and chief boss, without even a look or glance of inspec-

tion by either of them, to send Ward in again to sink the
chamber deeper.    Long gave the order to Ward as coming
from Hanks, which Ward obeyed; and when he had dug and
shoveled out the chamber to the depth of thirteen feet, one of
the unsupported sides fell in and crushed the appellee under
the weight of the fallen mass, causing to him painful and per-
manent injury.    Here is a distinct act of positive negligence
and recklessness of the authoritative agent of the defendant
company, by which, proximately and directly, a day laborer,
who was bound to obey the orders of his superior, was severely
injured and disabled for life.

It is argued that the appellee, Ward, must be presumed to
have known, and was in duty bound to observe the dangerous
character of the work, and therefore he assumed the danger
incident to his employment.    He swears positively that he did
not know of the danger of his situation and surroundings;
and the jury found, as a fact, that he was not guilty of con-
tributory negligence in obeying the specific and positive order
of his superiors to return into the chamber and sink it deeper.
Hanks and Long knew of the danger, and the duty of careful
and constant inspection of the situation and progress of the
work, to detect and provide against danger and injury to the
laborer who was digging and shoveling dirt in this narrow,
deep, and dark ditch, was wholly neglected by them to the
serious injury of the defendant's employee.    An employee as-
sumes such risks as are incident to his employment and do not
arise or ensue from the negligence of his employer, or his
deputies in authority over him and his work; but the evidence
in this case establishes the fact that the accident would not
have happened but for the gross recklessness of the defendant
company's agent.    The usual plan of doing this work had been
to sink the chamber six or eight feet, and then " break off "
the loosened and undermined forehead or impending mass, be-
fore beginning to sink the chamber deeper.    Had this been
observed in this case there could be but little or no danger of

serious injury, because the walls being low, were not likely to fall; and if they should commence to fall the workmen could save themselves by getting out, which it was impossible for Ward to do in a narrow cell only eighteen inches wide and thirteen feet deep, into which he was ordered to work, and to sink the chamber several feet deeper than was usual; and that, too, in earth more dangerous and treacherous than had been encountered in the work before reaching the cut where the accident and the injury happened.

When the servant shows that his injury was in consequence of an increased risk, and one not ordinarily incident to his employment, but growing out of the master's negligence, the burden of proof is upon the master to show that the servant knew of and understood the increased danger. 40 Michigan, 420–24.

"If he knew, or reasonably ought to have known, the presence of danger to him in the course of his employment of the cattle chute in question, and saw fit, notwithstanding, to continue in his employment, he might be held to answer the extraordinary risk, as well as the ordinary risks of his service. But it appears to us that this consequence of acquiescence ought to rest on positive knowledge of precise dangers assumed—not on vague surmises of possibility of danger." 42 Wisconsin, 583.

If an employee, *without specific command* as to time and manner, uses an obviously defective implement, the defect alike open to the observation and within the comprehension of both employer and employee, both stand upon common ground, and no recovery can be had for a resulting injury to either; but when the servant acts under the orders of his master, and is injured, the rule is different, for then it cannot be said, with any degree of reason, that the master and servant stand on equal footing, even though they have equal knowledge of the danger. The servant occupies a position of subordination and may rely upon the skill and knowledge of his master, and is not free to

act on his own suspicions." *Iron Ship, &c., Works* v. *Nutteral,* 119 Pa. St., 149; *Shortel* v. *St. Joseph,* 104 Mo., 114.

. "If therefore the master orders the servant into a situation of danger, and he obeys, and is thereby injured, the law will not deny him a remedy against the master on the ground of contributory negligence, unless the danger was so glaring that no prudent man would have entered into it, even when, like the servant, he was not entirely free to choose. The same rule has been applied, and with sound reason, where the person injured was ordered into a service of peculiar danger, such as he did not undertake to perform, by another servant standing towards him in the relation of superior or vice principal; and if he obeys such an order and is injured he may recover damages; the law will not declare his act of obedience negligence *per se;* but will leave it to the jury to say whether he ought to obey or not." Thompson on Negligence, 975. "Where there is any doubt whether the employee was acquainted, or ought to have been acquainted, with the risk, the determination of the question is necessarily with the jury." *Runnell* v. *Dilworth,* 111 Pa. St., 343. The foregoing principles of law are directly applicable to the facts of this case. Of the instructions given by the court, it is enough to say that they correctly state the law, and there is nothing in them of which the appellant can complain. Our judgment is to affirm the judgment of the circuit court of Carroll county.

JUDGMENT AFFIRMED.

NOTE BY REPORTER.—As to obedience to orders affecting contributory negligence, see note to *Orman* v. *Mannix,* (Colo.) 17 L. R. A., 602.