Argued July 13, affirmed July 30, rehearing denied September 14, 1915.

# HARTMAN *v.* OREGON ELEC. RY. CO.

(149 Pac. 893; 151 Pac. 472.)

**Master and Servant—Injury to Servant—Cause of Injury—Nonsuit.**

1. Where, in an action for injuries to an electrician's helper from an electric shock while attempting without assistance to extend electric wires, there was evidence from which the jury might have found, either that the proximate cause of the injury was the defendant employer's negligence in failing to furnish deceased with needed assistance, or that the injury was due to a cause in respect to which defendant was not at fault, a nonsuit was properly denied.

## ON PETITION FOR REHEARING.

**Master and Servant—Injuries to Servant—Employers' Liability Act.**

2. An employee engaged in putting up electric lines and installing lights comes within the protection of the employers' liability law (Laws 1911, c. 3); the work necessarily being dangerous.

**Master and Servant—Injuries to Servant—Employers' Liability Act.**

3. Under employers' liability law (Laws 1911, c. 3), Section 6, declaring that the contributory negligence of a person injured shall not be a defense, but may be taken into account by the jury in fixing the damage, slight carelessness of an employee will not bar recovery for an injury caused by the employee's carelessness and the gross negligence of the employer; but in all cases where there has been any negligence on the part of the employer, the issue of contributory negligence must be submitted to the jury for comparison.

[As to proceeding under Workmen's Compensation Act as governed by rules applicable to actions generally, see note in Ann. Cas. 1915A, 741.]

From Multnomah: CALVIN U. GANTENBEIN, Judge.

Department 2.   Statement by MR. CHIEF JUSTICE MOORE.

This is an action by Mabel B. Hartman, the mother of William B. Hartman, deceased, against the Oregon Electric Railway Company, to recover damages resulting from his death, which is alleged to have been caused by the defendant's negligence. The deceased, on March 19, 1913, the time when he was hurt, was 22 years old, and was employed as an electrician's helper

by the defendant, which was then engaged near Orville, Oregon, in cutting a tunnel into which were extended electric light wires to furnish illumination. From the tunnel outward were suspended other wires, to which six electric lights were attached to illumine the dump, where material taken from the subterranean passage was deposited. At the mouth of the tunnel was a board, to which were fastened two switches—one being operated by the thumb and fingers, called a "button switch," and the other worked by a smaller lever, and known as a "knife switch"—whereby the electric current was controlled in the tunnel and along the dump. Mr. Hartman, on March 19, 1913, undertook, without assistance, to extend the wires outside the tunnel, so as to install three more lights, and in doing so received a shock of electricity from the effects of which he died.

The negligence charged in the complaint as the proximate cause of the injury is in effect: (1) That the defendant failed to promulgate and enforce any rules for the performance of the work in which Hartman was engaged when he was hurt; (2) that structural line work should not have been permitted without assistance by an electrician's helper, who was an inexperienced workman; (3) that Hartman was directed to work alone; (4) that he should not have been allowed to undertake a performance of such work, except under the control of an experienced electrician, who could have warned him of the danger; (5) that the wires were not insulated at the place where the deceased received the shock; (6) that the wire furnished him with which to do the work was in short pieces, requiring splicing and wrapping; (7) that the wires were not placed on poles, but were hung near the ground, and were so arranged as not to permit a per-

son safely to pass between them; (8) that the defendant informed Hartman the wires carried only 370 volts, when more than 750 were transmitted; (9) that the supports for the wires bore no color to indicate a dangerous voltage; (10) that the wires were uninsulated at places where employees were liable to come in contact with them, and the switches so placed as not properly to guard the wires; (11) that the wires were in a dangerous condition when first installed; (12) that the switch Hartman was required to use was out of repair; (13) that because of his age and inexperience it was the duty of the defendant to exercise great care for his protection, which it failed to do; (14) that a sufficient number of coemployees were not appointed to assist Hartman; (15) that the defendant required him to work in a dangerous place, outside the scope of his employment, and failed to warn him of the extra hazard; and (16) that a safe place was not furnished him in which to work.

The answer denied the material averments of the complaint, and for further defenses alleged, in substance, that Hartman was an experienced workman, who understood and appreciated all the dangers to which he was exposed; that he was forbidden by the defendant's proper agent to do any work at or near the tunnel; that he recklessly disobeyed such command; that he negligently failed to protect the joints of wire with tape; that the work which he was doing was carried on in the daylight, and it was unnecessary for him to turn on the lights; that he was carefully instructed as to the manner of doing all such work, and hence the injuries which he received were attributable to his own carelessness. The reply put in issue the allegations of new matter in the answer, and, the

cause having been tried, the plaintiff secured a judgment for the sum of $5,000, and the defendant appeals.

AFFIRMED. REHEARING DENIED.

For appellant there was a brief over the names of *Mr. Isham N. Smith, Mr. John F. Logan, Messrs. Carey & Kerr* and *Mr. Charles A. Hart,* with an oral argument by *Mr. Smith.*

For respondent there was a brief with oral arguments by *Mr. Lotus L. Langley* and *Mr. Manche I. Langley.*

Opinion by MR. CHIEF JUSTICE MOORE.

1. It is maintained by the defendant's counsel that the proximate cause of the injury was Hartman's own negligence, and this being so, errors were committed in denying a motion for a judgment of nonsuit, when the plaintiff had introduced her testimony and rested, and in refusing to instruct the jury to find for the defendant when the cause was submitted. When the motion for a nonsuit was denied, the court limited the plaintiff's right of recovery to the sole issue as to whether or not it was necessary for the defendant to furnish the deceased with additional help, thereby excluding from the consideration of the jury all other grounds of negligence charged in the complaint as the proximate cause of the injury.

The action of the court in denying the request for a directed verdict will be reviewed, since this inquiry includes both questions. The testimony, all of which is made a part of the bill of exceptions, tends to show that a switch on the main wires controlled the electric current in the tunnel and along the dump.

E. F. Walton, the defendant's chief electrician, testified that on the day preceding his injury Hartman was given a button switch, which he installed on a board at the mouth of the tunnel, but this switch would turn off the light on only one side of the dump lines, and in order to deaden all these wires it was necessary to pull down the lever of the knife switch fastened to the same board; that when putting in this switch, March 18, 1913, J. E. Harris, who was in charge of the work at the tunnel, informed Hartman that more lights were needed on the dump wire in addition to the six that had been previously installed; that Hartman imparted such information to the witness, who told him the work could not well be done at that time for lack of wire with which to make the extension; that the next morning the witness sent Hartman to East Independence to replace some electric lights that had been burned out, directing him to report to another station on the defendant's railway as soon as he had complied with the previous command; that, instead of obeying such order, Hartman returned to the tunnel and with some short pieces of wire undertook to extend the 50 or 75 foot line along the dump about 25 feet further, so as to install three more lamps.

J. E. Harris testified that in doing such work Hartman first turned down the lever of the knife switch, pieced out and suspended the extended dump wires, and hung the additional lamps, but when he raised the lever of the switch, the new lamps which he had put up would not give any light, while those originally installed afforded illumination; that Hartman thereupon returned to the mouth of the tunnel, again pulled down the lever of the knife switch, re-examined the extension wires he had put up, and raised the lever of the switch, but the lamps he had installed would

not burn; that he repeated this operation about six times, with no different results; that this witness, having observed these unsuccessful attempts made by Hartman to cause the three lamps to burn, returned to his work, but soon thereafter, hearing a scream, he hastily went outside and found the deceased lying beneath a joint he had made in the extended wires, from which union the tape had been partially removed, or had not been wound; that at the same time the witness discovered the six lamps on the old wires were burning; that the button switch on the dump line had signals which should have denoted the condition of the electricity, but that such tokens were false, and indicated the current was turned off when it was on, and on when it was off.

The testimony of E. F. Walton was undertaken to be contradicted by offering in evidence an original answer, wherein it was averred in effect that Hartman was directed to renew the burned-out lamps at East Independence and then proceed to the tunnel, extend the wires and install the lamps. The defendant's counsel, explaining this discrepancy, stated to the court that when such answer was prepared it was supposed the allegation adverted to was correct, but, subsequently learning that Hartman had been commanded not to do any work at the tunnel on the day he was injured, an amended pleading was filed. The statement in the original answer was supplemented by a contradiction of the testimony of Walton, who declared that when Hartman was hurt he had with him only a pocket-knife, a screw-driver and a pair of pliers, when the testimony of Harris is to the effect that after the accident a grip full of electrician's tools was found near the place of the injury. From this conflicting testimony the jury evidently concluded that Hartman was

directed by Walton to perform the services in which he was engaged when he was hurt.

The plaintiff's testimony tends to show that, though Hartman was employed by the defendant as an electrician's helper, he was not a journeyman, and had but little knowledge of electricity, or of the dangers incident to the business. The defendant's testimony is to the effect that the deceased was an experienced workman, who knew and appreciated the hazards which he was liable to encounter in his employment. The testimony is also contradictory as to whether or not it was essential that Hartman should have had a helper when he was hurt. The foregoing is believed to be a fair epitome of the testimony applicable to the question involved, and based thereon it is argued that the judgment rendered herein is erroneous, since the evidence offered fails to show that the defendant's negligence was the proximate cause of the injury.

It will be remembered that Walton, the defendant's agent, furnished Hartman, to be used at the dump, a button switch, the signals of which were false. Whether or not this switch shut off the current from the side wire to which the six electric lights were attached does not appear from the testimony. That this switch was defective tends to show that the defendant was careless in the selection of instrumentalities, which negligence may have been the proximate cause of Hartman's injury. It is possible, however, that in installing the button switch Hartman may have neglected to turn the signal disk so as properly to indicate the condition of the electrical current on the dump line, from which supposed circumstance his incompetence might reasonably have been inferred, thus affording a reason for the necessity of furnishing him with additional help, the defendant's failure to supply which

may also have been the proximate cause of the injury. When there are two or more probable causes of an injury, the question should be submitted to the jury: *Elliff* v. *Oregon R. & N. Co.,* 53 Or. 66, 76 (99 Pac. 76); *Palmer* v. *Portland Ry., L. & P. Co.,* 56 Or. 262, 268 (108 Pac. 211); *Doyle* v. *Southern Pac. Co.,* 56 Or. 495, 516 (108 Pac. 201); *Smith* v. *Southern Pac. Co.,* 58 Or. 22, 31 (113 Pac. 41, Ann. Cas. 1913A, 434); *Graves* v. *Portland etc. P. Co.,* 66 Or. 232, 242 (Ann. Cas. 1915B, 500, 134 Pac. 1); *Gynther* v. *Brown & McCabe,* 67 Or. 310, 318 (134 Pac. 1186).

It is believed that there was evidence tending to show that the deceased was incompetent, and that therefore he should have had help, which afforded evidence of a problematical primary cause sufficient to be submitted to the jury, and that in denying the motion for a judgment of nonsuit, and in refusing to direct a verdict for the defendant, no errors were committed. Other errors are assigned, but they are deemed to be immaterial.

It follows that the judgment should be affirmed, and it is so ordered.      AFFIRMED.   REHEARING DENIED.

MR. JUSTICE BEAN, MR. JUSTICE EAKIN and MR. JUSTICE HARRIS concur.

Rehearing denied September 14, 1915.

On Petition for Rehearing.

(151 Pac. 472.)

*Mr. Isham N. Smith, Mr. John F. Logan, Messrs. Carey & Kerr* and *Mr. Charles A. Hart,* for the motion.

*Mr. Lotus L. Langley* and *Manche I. Langley, contra.*

Opinion by Mr. Chief Justice Moore.

2. It is asserted in a petition for a rehearing that in the former opinion herein many of the important questions presented by the appellant's brief were not considered. The chief errors originally relied upon for reversal of the judgment were the denial of a motion for a judgment of nonsuit and the refusal to direct a verdict for the defendant, requests for which rulings by the trial court were based on the ground that Hartman's injury resulted from his own negligence, thereby precluding a recovery of any damages. At the time he was hurt, as appears from the averments of the complaint and from the evidence, he was in the defendant's service and engaged in putting up electrical lines and installing lights, which work was necessarily dangerous, requiring the defendant to exercise the highest degree of care to protect the lives and limbs of its employees, thus bringing the cause of action within the provisions of the employers' liability law: Gen. Laws Or. 1911, c. 3; *McClaugherty* v. *Rogue River Electric Co.,* 73 Or. 135 (140 Pac. 64).

3. Section 6 of that act reads:

"The contributory negligence of the person injured shall not be a defense but may be taken into account by the jury in fixing the amount of the damage."

The method thus prescribed for determining the measure of compensation is not the rule of comparative negligence in Illinois, where slight carelessness on the part of an employee, when compared with gross negligence by the employer, will not prevent a recovery of damages for an injury sustained under such circumstances: 1 Thomp., Neg., § 269. The statute providing that the contributory negligence of an employee should not constitute a bar to his recovery of damages, but should be considered by the jury in determining the amount of his indemnity for an injury, is a recognition of the method prevailing in courts of admiralty of apportioning the damages between the parties in cases of marine torts, where the accident was partly due to the fault of the libelant: *Id.,* § 268.

In actions based on a violation of the provisions of the enactment mentioned, though the question of contributory negligence of an employee has been considered on appeal, the rule is that, when there has been any carelessness on the part of the employer, with which the negligence of the employee co-operates, the issue of contributory negligence must be submitted to the jury for comparison: *Filkins* v. *Portland Lumber Co.,* 71 Or. 249 (142 Pac. 578); *Chadwick* v. *Oregon-Washington R. & N. Co.,* 74 Or. 19 (144 Pac. 1165); *Sonniksen* v. *Hood River Gas & Electric Co.,* 76 Or. 25 (146 Pac. 980). When, however, it satisfactorily appears, from an examination of all the testimony and a consideration of the inferences based thereon and of the presumptions deducible therefrom, that an employer has not been guilty of any negligence whatever, and the injury which the employee sustained resulted wholly from his own carelessness, there is then no question of contributory negligence to be submitted to the jury.

In the case at bar the testimony shows that the de-

fendant furnished to Hartman, an alleged incompetent employee, a defective button switch, which he installed where it controlled in part the current of electricity, by coming in contact with which he was injured. There was therefore negligence on the part of the defendant, to which the carelessness of Hartman conduced, and the issue of contributory negligence was properly submitted to the jury.

The petition for a rehearing should be denied; and it is so ordered.        AFFIRMED. REHEARING DENIED.

MR. JUSTICE BEAN, MR. JUSTICE EAKIN and MR. JUSTICE HARRIS concur.

---

On the merits argued February 17, affirmed March 2, 1915.
Petition for rehearing submitted March 12, denied April 20, 1915.
Petition for modification filed May 1, denied May 18, 1915.
Rehearing denied September 14, 1915.