Argued March 7, reversed and remanded March 20, 1917.
Rehearing and motion to retax costs denied April 10, 1917.

## WIKE v. OREGON-WASHINGTON R. & N. CO.*

(163 Pac. 825.)

**Master and Servant—Injuries to Servant—Negligence of Master.**

1. Under Section 6946, L. O. L., declaring that every corporation operating a railroad shall be liable in damages for any and all injuries sustained by an employee, resulting from the wrongful act, neglect or default of an agent or officer of such corporation superior to the employee injured, or of a person employed by such corporation having the right to control or direct the services of such employee, a railroad company which through its agent required plaintiff, a servant, to work without a helper at a task requiring a helper is guilty of negligence.

**Master and Servant—Injuries to Servant—Assumption of Risk.**

2. Where plaintiff's immediate superior informed him that he would not get hurt in wiring asbestos lagging on an engine, without any helper, and that he would give him a helper as soon as he had the time, plaintiff by continuing in the employment, the danger not being imminent, did not as a matter of law, assume the risk of injury from the danger of the wire to spring when it was passed over the boiler of the engine.

**Master and Servant—Injuries to Servant—Duty to Warn.**

3. A carpenter who had placed asbestos lagging on many engines is not, the work being simple, and the only possible danger being that of the possibility of the wire springing as it was passed around the engine to hold the asbestos, entitled to a warning, and an instruction, submitting the question of the duty of the master to warn, is erroneous.

[As to warnings and instructions by master to servant engaged in dangerous work, see notes in 1 Am. St. Rep. 28; 1 Am. St. Rep. 548.]

**Master and Servant—Actions—Evidence—Instructions—Sufficiency.**

4. In such case instructions that, if defendant failed to provide the carpenter with sufficient aid to safely do the work and such failure was the proximate cause of the injury, the verdict should be for him, and that if a helper was unnecessary, verdict should be for defendant, were erroneous, as omitting reference to the defenses of contributory negligence and assumption of risk.

**Appeal and Error—Assignments of Error—Sufficiency.**

5. Assignments of error that the court erred in overruling and declining to sustain defendant's motion for nonsuit and in giving

*For authorities discussing the question of duty of master to provide sufficient help, see notes in 17 L. R. A. (N. S.) 773; 40 L. R. A. (N. S.) 913.    REPORTER.

numbered instructions are, where the bill of exceptions showed under the same numbers the instructions, refusal of which was complained of, sufficient, under the rule requiring an appellant to assign and set out briefly and concisely the errors complained of.

From Multnomah: WILLIAM N. GATENS, Judge.

Action by Thomas Wike against the Oregon-Washington Railroad & Navigation Company, a corporation.

REVERSED AND REMANDED.

REHEARING AND MOTION TO RETAX COSTS DENIED.

Department 2.  Statement by MR. JUSTICE MC-CAMANT.

This is an action brought to recover damages for a personal injury sustained by plaintiff while working for defendant on February 10, 1914.  From a verdict and judgment for plaintiff an appeal is prosecuted.

REVERSED AND REMANDED.

REHEARING AND MOTION TO RETAX COSTS DENIED.

For appellant there was a brief over the names of *Mr. William W. Cotton, Mr. Arthur C. Spencer* and *Mr. Charles E. Cochran,* with an oral argument by *Mr. Cochran.*

For respondent there was a brief with oral arguments by *Mr. Albert Streif* and *Mr. G. E. Hamaker.*

MR. JUSTICE MCCAMANT delivered the opinion of the court.

It appears that at the time of his injury plaintiff was 43 years of age.  During most of his adult life he had worked as a carpenter.  In March, 1913, he had entered the employ of defendant at its repair shops in Albina.  His work consisted largely in putting asbestos lagging around the boilers of locomotives.  The evidence shows that this work requires

that the boiler be encircled by galvanized iron wire at intervals of about eighteen inches; the sheets of lagging extend horizontally on the boiler and are attached to the circular wires by light copper wires.

At the time of his injury plaintiff had been engaged in this work for eleven months. His cross-examination developed the fact that he understood it. He had been employed by one Mat Pianus. While the matter was disputed, the evidence strongly supported plaintiff's claim that Pianus was a superior employee of defendant whose orders plaintiff was bound to obey. Plaintiff was the only witness who testified as to the circumstances under which he was hurt. He described the occurrence in the following language:

"A little after eleven o'clock Mat. Pianus brought in a coil of wire, told me to go to engine No. twenty-nine, fix that wire around there, when there was nobody else there. I told him I needed another man. Mat. Pianus told me, 'You God damn fool, hurry up, go in a hurry, you will not be hurt there, or die, go quickly, and I will give you a man when I can, when I have time.' I did not dare to say anything against him because I knew what man he was. I took wire from the coil and started to place it under the boiler, put the end of it under the boiler, in a block, took one end of the wire in my hand and climbed up a ladder, dropped the end which I had in my hand over the boiler, looked up to see the other end of the wire, and before I noticed anything else it fell down and hit me in the eye. The boiler was rusty, and the wire had caught in the rust there."

The evidence showed that as a result of the accident plaintiff lost the sight of his right eye. Plaintiff also testified that although he had lagged a great many engines he had wired only six of them and on all of these occasions he had had another man to help him. These facts were disputed by the defendant. Pianus was called as a witness for the defendant and denied

that he had had any such conversation with plaintiff as testified to by the latter. Plaintiff's evidence showed that if two men were working on the wiring of a locomotive the wire was passed over the top of the boiler from one to the other and the risk of the wires springing and flying was eliminated. That the heavier wire in use was liable to spring was shown by one of the defendant's witnesses as well as by the plaintiff.

Plaintiff elected to try the cause as a common-law action for negligence except as the common law is modified by Section 6946, L. O. L. This section, in so far as it is material for present purposes, is as follows:

"Every corporation operating a railroad in this state, whether such corporation be created under the laws of this state, or otherwise, shall be liable in damages for any and all injury sustained by any employee of such corporation as follows: When such injury results from the wrongful act, neglect, or default of an agent or officer of such corporation, superior to the employee injured, or of a person employed by such corporation having the right to control or direct the services of such employee injured, or the services of the employee by whom he is injured; * * *"

This opinion must be read in the light of this theory on which the case was tried.

1. Counsel for the defendant earnestly contends that there was error in overruling defendant's motion for a nonsuit and for a directed verdict. The complaint charges that the defendant was negligent in putting plaintiff to work unaided on an undertaking that required the services of two men if it was to be done with reasonable safety. While the question was strenuously contested in the lower court, there was evidence from which the jury could find that the usage

of the defendant was to detail two men to do the work which plaintiff was doing at the time of his injury. There was also evidence from which the jury could find that plaintiff would not have been hurt if another man had been furnished by the defendant to assist him. Negligence may consist in putting a servant to work at a task which requires more helpers than the master furnishes: *Hartman* v. *Oregon Electric R. Co.,* 77 Or. 310 (149 Pac. 893, 151 Pac. 472) ; *Missouri etc. Ry. Co.* v. *Scott* (Tex. Civ.), 160 S. W. 432; *Thorpe* v. *Missouri Pac. Ry. Co.,* 89 Mo. 650 (2 S. W. 3, 58 Am. Rep. 120) ; *Stoddard* v. *St. Louis etc. Ry. Co.,* 65 Mo. 514; *Fitter* v. *Iowa Telephone Co.,* 143 Iowa, 689 (121 N. W. 48) ; *Pigford* v. *Norfolk Southern R. Co.,* 160 N. C. 93 (75 S. E. 860, 44 L. R. A. (N. S.) 865).

2. In view of the simplicity of the work and the fact that plaintiff was a man of mature years who understood the work he was doing, defendant strongly contends that plaintiff assumed the risk of such injury as he sustained. We regard the case as a close one on this issue, but we think plaintiff has proved enough to go to the jury. He testified that he told his immediate superior that he needed another man and was told that he would be given another man when this superior had time. The work involved no imminent peril; it cannot be said as a matter of law that no prudent man would have continued at this work in the absence of the promised helper. Plaintiff was injured a few minutes after this conversation with Pianus, under whose orders he claimed to have worked. He testified that Pianus assured him the work was safe and expressly commanded him to continue it. The weight of authority is to the effect that plaintiff did not as a matter of law assume the risk of injury by remaining at work under the above cir-

cumstances: *Adams* v. *Corvallis etc. R. Co.,* 78 Or. 117, 132 (152 Pac. 504); *New York etc. R. Co.* v. *Vizvari,* 210 Fed. 118, 125 (126 C. C. A. 632, L. R. A. 1915C, 9); *Thorpe* v. *Missouri Pac. Ry. Co.,* 89 Mo. 650, 662–665 (2 S. W. 3, 58 Am. Rep. 120); *United States Leather Co.* v. *Showaller,* 113 Va. 479 (74 S. E. 400, 402); *Pigford* v. *Norfolk Southern R. Co.,* 160 N. C. 93 (75 S. E. 860, 44 L. R. A. (N. S.) 865); *Herr* v. *Green,* 156 Iowa, 532 (136 N. W. 511, 513, 137 N. W. 917); 1 Shearman and Redfield on Negligence (6 ed.), 207h.

3. The court gave the following instruction:

"If you should find that the employment of plaintiff in wiring said engine was one involving any peculiar labor, or that there was connected with the same any particular causes of danger of which plaintiff was ignorant by reason of his inexperience, if you should find he was inexperienced in said work, it is the duty of the master to instruct him upon those subjects and inform him what it is he needs to be watchful of in the discharge of his duties; and, if the master neglects these things, he is held chargeable for the injuries that result from that neglect. Therefore, if you should find that the work of wiring said engine without sufficient aid, if you find there was insufficient aid, was dangerous for the reasons alleged in the complaint, and that plaintiff did not know of said danger, and that said danger, if there was any, was not obvious, and that the defendant was negligent in not warning him, as alleged in plaintiff's complaint, then he is entitled to recover."

The giving of this instruction was error. There was no evidence that plaintiff was inexperienced or did not understand the work in which he was engaged. He had been engaged in this work for eleven months. He was forty-three years of age. On cross-examination he testified as follows:

"Q. How many engines did you have to put the asbestos lagging on?

"A. I cannot exactly count the number of the engines, there are so many of them there, I have not counted. * *

"Q. About how many?

"A. There were sometimes maybe one and perhaps three or four, and so on.

"Q. Each day?

"A. Sometimes, some days, on some days more and sometimes there was less and sometimes more."

It is true that plaintiff testified that he had assisted in the wiring of only six locomotives, but his own testimony shows that the wiring was a part of the lagging He identified upwards of a hundred time-cards, showing that on each of the occasions noted on the cards he had worked at lagging. He must therefore have been present frequently when locomotives were wired.

Furthermore, the work was simple, well within the comprehension of any man who had had a half day's experience at it, as one of the witnesses testified. The only danger incident to the work which counsel for plaintiff has called to our attention is the tendency of wire to spring unless it is attached or straightened. Plaintiff must have understood this tendency as well as anyone. The master is under no obligation to warn the servant under such circumstances: 4 Thompson on Negligence, 4074; *Flaig* v. *Andrews Steel Co.,* 141 Ky. 391, 396, 397 (132 S. W. 1015); *Manley* v. *Minneapolis Paint Co.,* 76 Minn. 169 (78 N. W. 1050); *Deaton* v. *Abrams,* 60 Wash. 1 (110 Pac. 615, 47 L. R. A. (N. S.) 266); *Brown* v. *Oregon Lumber Co.,* 24 Or. 315, 319 (33 Pac. 557).

4. The defendant set up the defenses of contributory negligence and assumption of risk. The court instructed the jury that if these defenses were sustained

by the evidence the defendant was entitled to a verdict. In the same charge the court instructed the jury as follows:

"If you find from the evidence that defendant failed to provide plaintiff with sufficient aid to safely do the work, and that the failure to provide sufficient aid was the proximate cause of the injury, then I instruct you that your verdict should be for the plaintiff."

"If you find from the evidence in this case that it was not dangerous for the plaintiff to do this work alone, in other words, it was a one man job instead of a two man job, your verdict should be for the defendant. On the other hand, if you find it was a two man job, and the work could not safely be carried on except by two men, then your verdict should be for the plaintiff."

These instructions should have been qualified by a reference to the defenses of contributory negligence and assumption of risk. Even though the defendant was at fault in failing to furnish an additional man for the work plaintiff was doing, it was not liable if plaintiff's negligence contributed to his injury or if plaintiff continued at the work fully understanding its danger and receiving no assurances from the defendant as to his safety. In the form in which they were given the instructions last quoted nullified and contradicted those given on the subjects of contributory negligence and assumption of risk and were error: *Neis* v. *Whitaker,* 47 Or. 517, 524 (84 Pac. 699); *Morrison* v. *McAtee,* 23 Or. 530, 533, 534 (32 Pac. 400).

5. Plaintiff claims that the assignment of errors in the defendant's abstract is insufficient to raise the questions relied on in this court. The fourth assignment is as follows:

"The Court erred in overruling and in declining to sustain appellant's motion for nonsuit."

The sixth is as follows:

"The Court erred in overruling and in declining to sustain appellant's motion for a directed verdict in its favor."

The twenty-sixth assignment is as follows:

"The court erred in giving to the jury its Instruction No. XIV."

In the bill of exceptions the instruction on the subject of defendant's duty to warn plaintiff was designated as Instruction XIV. The other instructions discussed in this opinion are similarly designated in the bill of exceptions and the giving of them is in like manner assigned as error. We think these assignments are sufficient in form. It is neither necessary nor desirable that an appellant should expand his abstract by argumentative matter setting forth his reasons for contending that the rulings specified are erroneous: *Morrison* v. *McAtee,* 23 Or. 530, 533 (32 Pac. 400). The rule requires appellant to "assign and set out briefly and concisely the errors relied upon." We think this was done by appellant. Our decision on this point is in entire harmony with *Dundas* v. *Grand View Land Co.,* 79 Or. 379 (155 Pac. 365), and with *Redsecker* v. *Wade,* 69 Or. 153 (134 Pac. 5, 138 Pac. 485, Ann. Cas. 1916A, 269), on which plaintiff relies.

It follows that the judgment is reversed and the cause remanded for further proceedings not inconsistent with this opinion.

REVERSED AND REMANDED.

REHEARING AND MOTION TO RETAX COSTS DENIED.

MR. CHIEF JUSTICE MCBRIDE, MR. JUSTICE MOORE and MR. JUSTICE BEAN concur.